IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ULUWEHI SAI, | ) | CIVIL NO. 09-00154 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART AND |
| vs. | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| H&R BLOCK ENTERPRISES, INC., | ) | |
| now known as H&R BLOCK | ) | |
| ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

On May 14, 2009, Plaintiff Uluwehi Sai filed a First

Amended Complaint that asserted age and race discrimination in

violation of the Age Discrimination in Employment Act of 1976, 29

U.S.C. § 621; Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-1; and state law, section 378-2 of the Hawaii

Revised Statutes.

On December 2, 2009, Defendant H&R Block Enterprises,

LLC, filed a motion for summary judgment, arguing: 1) that Sai

had not suffered a tangible adverse employment action because she

voluntarily chose to resign in lieu of being fired; 2) that Sai

cannot demonstrate a hostile work environment; 3) that H&R Block

had a legitimate, nondiscriminatory reason for taking the actions

it did and that Sai cannot raise a genuine issue of fact as to

whether the proffered reasons were pretextual; and 4) that Sai lacks any evidence of racial discrimination.

The court grants summary judgment to H&R Block with respect to only the hostile work environment part of Sai's age discrimination claim.  H&R Block's motion is denied with respect to Sai's age discrimination claim arising out of a tangible adverse employment action.  Sai raises a genuine issue of fact as to whether she was coerced into retiring and as to whether H&R's proffered reason for its actions was a pretext for age discrimination.

Summary judgment is also granted in favor of H&R Block on all of Sai's race discrimination claims.

II.      SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary

judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

III.    BACKGROUND FACTS.

Sai began working for H&R Block in 1980. See Declaration of Uluwehi Sai ¶ 7 (Jan. 14, 2010).  She became the Honolulu district manager for H&R Block in 1995. Id. ¶ 13.

In February 2007, Paul Latter became the director of H&R Block's "Region 69," which includes Honolulu. See Affidavit of Paul Latter ¶ 2 (Dec. 1, 2009).

4

In May 2007, Sarah McElwee became the managing director of the Northwest division of H&R Block.  See Affidavit of Sarah McElwee ¶ 5 (Dec. 1, 2009).  The Honolulu district of H&R Block reported to McElwee.  McElwee Aff. ¶ 9.  It appears that Latter also reported to McElwee.  See Id. ("At all relevant times, Region[] 69 . . . reported to me").

In June 2007, Erica Myers applied to become the district-manager-in-training for Honolulu.  See Sai Decl. ¶ 47-48.  Sai says that Latter recruited Myers from his former employer, FedEx Kinko's.  Id.  Sai says that Myers, 34 years old, was hired in October 2007 and began working in Honolulu in January 2008.  Id. ¶¶ 50, 66.  Sai says that Myers sought out complaints about Sai and that, six days after Myers started working in Honolulu, Sai was orally reprimanded for leading by intimidation, using derogatory language, and showing favoritism.  Sai alleges that more complaints were made about her between January and April 2008 than in the entire time since Sai became the district manager in 1995.  Id. ¶¶ 68, 83.

Latter says that, in early April 2008, he was told that Sai was directing and/or allowing tax preparers to work "off the clock."  See Latter Aff. ¶ 3.  Latter says that he told Sarah McElwee and Jeff Hutchins about this.  Id.

On or about May 2, 2008, Sai had a meeting with a written agenda that said the "go-home plan" was to be discussed.

5

The agenda, apparently prepared by Sai or at her direction, also stated:

> * No one sits idle
>    * Do CBT's and get your certified hours. . .
>    off the clock
>    * No one on the clock sitting and waiting for
>    clients to walk in

See Sealed Ex. 11 (ellipses in original).[1]  One of the tax preparers at the meeting, Robert Bellizzi, says that Sai did not actually tell tax preparers to work "off the clock" at the meeting.  Rather, "Ms. Sai made a big deal about when you come in to work you must be clocked in and you do not clock out until you leave."  Bellizzi Decl. ¶ 28; see also Leung Decl. ¶ 17.

Sarah McElwee and Jim Hintz, who became the regional director for Hawaii in May 2008, hearing that Sai had told tax preparers to be "on the clock" only when they had a client, met with Sai to discuss the matter on May 13, 2008.  See Sai Decl. ¶ 98; see also Affidavit of James Hintz ¶ 2 (Dec. 1, 2010); McElwee Aff. ¶ 8.  McElwee and Hintz had a copy of the May 2, 2008, agenda (Sealed Ex. 11) at the time of this May 13, 2008, meeting.  See McElwee Aff. ¶ 10.  Sai says that she told McElwee and Hintz that she had not told anyone to work "off the clock,"

---

[1]Pursuant to Local Rule 83.12(c), H&R Block is ordered to file redacted copies of Exhibits 10, 11, and 13 of the Concise Statement filed on December 2, 2009.  It does not appear to the court that sealing of the complete exhibits conforms with Local Rule 83.12(b).

6

but had told tax preparers that she expected them to "clock out and go home when business is slow."  See Sai Decl. ¶ 98.

Sai was confident that there was no evidence that she had "encouraged, allowed, or mandated" that her tax preparers work "off the clock."  Id. ¶ 99.  Several H&R Block employees confirm that Sai told them to be clocked in when they were working, unless they were doing nonmandatory training.  See Declaration of Pearl Momilani Au-Keliikoa ¶¶ 16, 19 (Jan. 11, 2010); Declaration of Luanne N. Goodness-Ono ¶¶ 15, 18 (Jan. 12, 2010); Declaration of Henrietta Keahi Hamachi ¶¶ 11, 14, 17 (Jan. 12, 2010); Declaration of Daniel K.T. Leung ¶ 15; Declaration of Thomas Risner ¶¶ 9, 14 (Jan. 8, 2010).  H&R Block also had a "go-home plan" under which employees could volunteer to clock out and go home when they were not busy with clients.  Au-Keliikoa Decl. ¶ 18; Declaration of Robert J. Bellizzi ¶ 26 (Jan. 8, 2010). Some employees, however, were confused and thought that they "had to clock in if [they] had a client, and clock out if [they] did not."  See Declaration of Robert J. Bellizzi ¶ 23 (Jan. 8, 2010).

To show that she had not told tax preparers to work "off the clock," Sai gave Hintz the agendas for several meetings she had held with tax preparers.  None included any reference to working "off the clock."  See Hintz Aff. ¶ 2; Sealed Ex. 13. Sai, however, did not submit the agenda for the meeting of May 2, 2008, which did mention being "off the clock" under some

7

circumstances.  McElwee, who knew about the agenda for the
meeting of May 2, 2008, says that she concluded from Sai's
omission of that agenda that Sai was attempting to mislead her.
McElwee and Hintz say that they decided to recommend the
termination of Sai not because of age or race, but because she
had been misleading.  <u>See</u> McElwee Aff. ¶¶ 11-13; Hintz Aff. ¶ 4;
Deposition of Sarah McElwee at 167-68 (Oct. 29, 2009); Deposition
of James Hintz at 88-89 (Oct. 30, 2009).  Latter did not
participate in the alleged decision to fire Sai or seek her
resignation.  <u>See</u> Latter Aff. ¶ 5; McElwee Aff. ¶ 14.

        McElwee confronted Sai with the May 2, 2008, meeting
agenda, describing it as proof that Sai had told tax preparers to
work "off the clock."  Sai says that she attempted to explain the
agenda, but her attempts were blocked.  Sai says that she was
told that H&R Block did not care what her explanation was and
indicated that she "had a choice to retire or to be terminated."
Sai Decl. ¶ 102.  According to Sai, she chose to retire only
because it was clear that she would otherwise be terminated.  <u>Id.</u>
Deposition of Uluwehi Sai at 100-01 (Sept. 17, 2009); <u>but see</u>
McElwee Aff. ¶ 15 (stating that, had Sai chosen not to retire,
McElwee would have consulted H&R Block's human resources
department about her recommendation to terminate Sai); Hintz Aff.
¶ 6 (same).

Sai says that, although she was told that she had four or five days to make her decision, she decided to retire immediately because she was going to be terminated anyway.  Sai Depo. at 101-02.

When Sai retired, Myers replaced her.  One of the tax preparers, Pearl Momilani Au-Keliikoa, says that, after Myers became the district manager in September 2008, Au-Keliikoa met with Myers.  Au-Keliikoa says that Myers then spoke negatively about Sai, referring to the removal of the "old generation" and "old thinking."  See Au-Keliikoa Decl. ¶¶ 30-31.  Au-Keliikoa says that Myers made similar statements in a December 2008 meeting.  See id. ¶ 34.

IV.     ANALYSIS.

A.   Age Discrimination Claims.

Sai's First Amended Complaint asserts age discrimination in violation of the Age Discrimination in Employment Act of 1976 ("ADEA"), 29 U.S.C. § 621, and section 378-2(1)(A) of the Hawaii Revised Statutes.  The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  Section 378-2(1)(A) similarly makes it unlawful for "any employer to refuse to hire or employ or to bar or discharge

from employment, or otherwise discriminate against any individual
in compensation or in the terms, conditions, or privileges of
employment" on the basis of a person's age.  Haw. Rev. Stat.
§ 378-2(1)(A).

    1.    Sai's Tangible Adverse Employment Action
          Claim Based on Her Age Survives The Motion
          for Summary Judgment.

        There is a three-part framework for analyzing an
employee's claim of disparate treatment based on age.  First, the
employee must make a prima facie showing that the employee was a
victim of age discrimination.  Nidds v. Schindler Elevator Corp.,
113 F.3d 912 (9th Cir. 1997).  To determine whether Sai
establishes a prima facie case of age discrimination, this court
examines whether:

          (1) at the time of the adverse employment
          action, the employee was 40 years of age or
          older; (2) some adverse employment action was
          taken against the employee; (3) at the time
          of the adverse action, the employee was
          satisfactorily performing his or her job;
          and, (4) the employee was replaced in his or
          her position by a significantly younger
          person with equal or inferior qualifications.

Becka v. APCOA/Standard Parking, 146 F. Supp. 2d 1109, 1110 (C.D.
Cal. 2001).  Accord Rose v. Wells Fargo & Co., 902 F.2d 1417,
1421 (9th Cir. 1990).

        If the employee makes a prima facie showing, the burden
shifts to the employer to articulate some legitimate,
nondiscriminatory reason for having terminated the employee.  Id.

Finally, if the employer has a legitimate explanation for the termination, the employee must be given a full and fair opportunity to demonstrate by competent evidence that the reasons articulated by the employer are in fact a pretext or a coverup for its discriminatory decision.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973) (analyzing Title VII claims); Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008) ("We evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in McDonnell Douglas"); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (noting that the burdens of proof and persuasion are identical under Title VII and the ADEA); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990) ("The shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under [the] ADEA").  This burden-shifting framework also applies to age discrimination claims under section 378-2.  See Shoppe v. Gucci America, Inc., 94 Haw. 368, 377, 14 P.3d 1049, 1059 (2000).

        H&R Block's initial argument with respect to Sai's age discrimination claim is that she does not present a prima facie case of age discrimination.  H&R Block contends that, even accepting as true Sai's account of what happened, Sai did not suffer a tangible adverse employment action because she was not

actually terminated, but instead chose to retire in lieu of
termination.  H&R Block's argument is unpersuasive.

H&R Block's argument is based on a misreading of
Knappenberger v. City of Phoenix, 566 F.3d 936 (9th Cir. 2009).
Contrary to what H&R Block takes from the case, Knappenberger
does not support the proposition that, in choosing retirement
over what she says was nearly certain termination, Sai avoided a
tangible adverse employment action and so may not claim
discrimination.

In Knappenberger, the plaintiff alleged that he
anticipated being fired and resigned to keep the lifetime health
benefits he could lose if fired.  Id. at 941.  The Ninth Circuit
did not read these allegations as alleging an involuntary
retirement.  Id.  Knappenberger recognized that retirement can be
involuntary when a reasonable person in the employee's position
would feel that he or she had no choice but to retire.  Id. at
941.  Whether such coercion was involved turns on an objective
standard.  Id.  Klappenberger explained that, when an employee
truly has a choice, the coercion necessary to support
discrimination is lacking.  Thus, courts should consider "whether
the employee was given an alternative to resignation or
retirement, understood the choice, had a reasonable time in which
to decide, or could select the timing of the retirement or
resignation."  The plaintiff in Knappenberger alleged only that

12

he anticipated being fired.  The plaintiff did not claim that he was told that he had to resign/retire or be terminated.  Nor was he required to make an on-the-spot decision.  Id.  Under those circumstances, the plaintiff's belief that he had to choose between two unpleasant alternatives did not amount to a forced resignation.  Id.

By contrast, Sai says she was told that her explanations would not matter and that she could either retire or be terminated.  Sai raises a genuine issue of fact as to whether she voluntarily retired or was coerced into retiring.

Sai's retirement is not cleansed of coercion by H&R Block's offer to let Sai take a few days to choose between retirement and termination.  To rule otherwise would provide a legal loophole to an employer that discriminates in violation of Title VII but allows an employee to take a little time to decide between retirement or being fired.  Such a loophole would contradict established Ninth Circuit precedent recognizing that coercion is to be determined using an objective standard.  See Knappenberger, 566 F.3d at 941.  Sai claims that she was told to retire or be fired.  This is sufficient to create a genuine issue of fact as to whether she was coerced into retiring.  See Burks v. Okla. Publ'g Co., 81 F.3d 975, 978 (10th Cir. 1996) (holding that, for purposes of an ADEA constructive discharge claim, a jury may find for the employee when the employee proves that she was faced with a choice of resigning or being fired).

13

H&R Block next argues that, even if Sai presents a prima facie case of age discrimination, H&R Block had a legitimate, nondiscriminatory reason for its actions and Sai cannot show that that reason was pretextual.  While this court agrees that H&R Block points to a legitimate reason for asking Sai to leave, Sai does respond with evidence that raises a genuine question of fact as to pretext.

H&R Block says that Sai was asked to leave because H&R Block thought Sai had lied about letting preparers work "off the clock."  Firing an employee for dishonesty is legitimate and nondiscriminatory.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (accepting as a legitimate, nondiscriminatory reasons that an employee had violated company policies and that there was perceived dishonesty during an ensuing investigation).  McElwee based this belief on the May 2, 2008, meeting agenda, which stated:

> * No one sits idle
> * Do CBT's and get your certified hours. . . off the clock
> * No one on the clock sitting and waiting for clients to walk in

See Sealed Ex. 11.

The burden shifts to Sai "to produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for [Sai's] discharge was false, or (b) that the true reason for [Sai's] discharge was a discriminatory one."

14

Coleman v. Quaker Oats Co., 232 F.3d 1271, 1287 (9th Cir. 2000);
Nidds, 113 F.3d at 918 ("To . . . survive summary judgment, Nidds
must produce enough evidence to allow a reasonable factfinder to
conclude either: (a) that the alleged reason for Nidds' discharge
was false, or (b) that the true reason for his discharge was a
discriminatory one.").

     Sai says that she was not even allowed to try to
explain what had happened.  See Sai Decl. ¶ 102 ("All my attempts
to explain the agenda were blocked").  Sai contends that,
notwithstanding the May 2, 2008, meeting agenda, she actually
told employees at the meeting that they were not allowed to work
"off the clock."  Bellizi confirms that, at the May 2008 meeting,
Sai did not tell tax preparers to work "off the clock."  He
recalls instead "that Ms. Sai made a big deal about when you come
in to work you must be clocked in and you do not clock out until
you leave."  Bellizzi Decl. ¶ 28; see also Leung Decl. ¶ 17.  H&R
Block's alleged refusal to let Sai explain herself suggests that
H&R Block was not really interested in whether Sai was being
deceptive.

     Added to the alleged lack of interest in Sai's
explanation is H&R Block's statement that Sai could "retire."
"Retirement" is not usually offered to young employees.  Sai
raises a genuine issue of fact as to whether H&R's proffered
reason was a pretext for age discrimination.  In other words,

15

while a reasonable jury might find that H&R Block asked Sai to
leave because it saw Sai as attempting to mislead its
investigators, a reasonable jury might instead conclude, based on
H&R Block's refusal to consider Sai's explanation for the May 2,
2008, agenda and request that Sai "retire," that H&R Block
revealed a pretext for age discrimination.

      Accordingly, with respect to the disparate treatment
age discrimination claims, H&R Block's motion for summary
judgment is denied.  Given this denial, this court need not
determine whether there is any competent evidence indicating that
Latter systematically replaced older individuals with younger
ones (evidence of a pattern of age discrimination).  <u>See</u> Sai
Decl. ¶¶ 36, 54-56, 95, 109.

      2.   Summary Judgment is Granted to H&R Block on
          Sai's Hostile Work Environment Age
          <u>Discrimination Claims.</u>

      Sai says that her age discrimination claim is not
limited to the adverse employment action context but also
includes a hostile work environment.  The Ninth Circuit has
recognized hostile work environment claims asserted under the
ADEA.  <u>See Sisho-Nownejad v. Merced Comty. Coll. Dist.</u>, 934 F.2d
1104, 1109 (9th Cir. 1991), <u>overruled on other grounds as stated
in Dominguez-Curry v. Nevada Transportation Dept.</u>, 424 F.3d 1027,
1041 (9th Cir. 2005).  To establish the existence of a hostile
work environment based on her age, Sai must demonstrate that

(1) she was subjected to verbal or physical conduct based on age, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment.  See Freitag v. Ayers, 468 F.3d 528, 539 (9th Cir. 2006); Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1187 (9th Cir. 2005).  To be actionable, the environment must be both objectively and subjectively offensive.  When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance.  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment. Id. at 788.

H&R Block argues that Sai offers insufficient evidence of a hostile work environment based on her age.  This court agrees.  At the hearing on the motion, this court asked Sai to identify the basis for this claim.  Sai explained that her hostile work environment claim was based on 1) the alleged solicitation of complaints about Sai by Myers, Sai's subordinate and Latter's fried; 2) an oral warning Sai received days after

Myers started working in the Honolulu office; and 3) Sai's discomfort and concern that her job was on the line because Myers was looking into whether people had problems with Sai.  Sai says that it was only after she had resigned that she realized, based on Myers's alleged September and December 2008 references to the removal of the "older generation" or "older thinking," see Au-Keliikoa Decl. ¶¶ 31, 34, that the above actions reflected age discrimination.  As a matter of law, these incidents were not sufficiently severe or pervasive to have altered the conditions of Sai's employment and to have created an abusive working environment.

        B.   <u>Race Discrimination Claims.</u>

        Sai claims to have suffered race discrimination in violation of Title VII, which provides:

> (a)  It shall be an unlawful employment practice for an employer –- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2 (emphasis added).  Sai also claims race discrimination in violation of section 378-2(1)(A) of the Hawaii Revised Statutes, which makes it unlawful for "any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise discriminate against any individual in compensation

18

or in the terms, conditions, or privileges of employment" based
on race.  Haw. Rev. Stat. § 378-2(1)(A).

        To the extent Sai asserts a hostile work environment
claim based on race, H&R Block is entitled to summary judgment.
Sai explains that her "charge of race discrimination is based on
the fact that I was falsely accused of creating a hostile work
environment by my demeanor with non-native associates and the
stereotype that Ms. McElwee characterized the Hawaiian culture in
her email to Ms. Meyer."  Sai Decl. ¶ 110.  In short, Sai is
claiming that, by accusing Sai herself of racial animus, H&R
Block was being racially discriminatory.  At the hearing, Sai
conceded that she has no legal authority directly supporting the
proposition that it violates Title VII to accuse someone of
having racial animus.  At best, Sai is contending that H&R Block
discriminated against her because she herself favored Hawaiians.
Sai says H&R Block was thereby "stereotyping."  This contention
is without merit.

        Sai presents no evidence that there is a stereotype of
Hawaiians as favoring Hawaiians.  In support of her
"stereotyping" argument, Sai cites Chadwick v. WellPoint, Inc.,
561 F.3d 38 (1st Cir. 2009).  In Chadwick, an employer was
accused of having failed to promote a mother because "women who
are mothers, particularly of young children, neglect their jobs
in favor of their presumed childcare responsibilities."  Id. at

19

41.  The First Circuit recognized a claim for improper sex-based stereotyping by the employer, as shown by the employer's assumption that a woman could not do her job as well as another worker given presumed family responsibilities.  Id. at 45.  This case involves no evidence of analogous "stereotyping" by H&R Block.

          H&R Block is also entitled to summary judgment on Sai's tangible adverse employment action claim based on race, as there is insufficient evidence to support such a claim.  The only evidence Sai points to in this regard is an email from McElwee to Myers dated August 25, 2008.  See Ex. 127.  That email told Myers that she is a "fast paced, change agent.  That is not typical in the Hawaiian culture and being aware of that is also important - some folks will need you to give them a little time."  Id.  This email does not demonstrate that McElwee made Sai resign because of McElwee's racial animus towards Hawaiians.  McElwee stated only that the Hawaiian culture was not fast-paced.  McElwee's comment may have referred to the culture of this racially diverse state, rather than to the native Hawaiian race.  Even assuming that McElwee was referring to the Hawaiian race, her comment does not demonstrate a racial animus, as it only refers to pacing without negatively commenting on any pace.  McElwee's isolated, post-termination comment is insufficient to raise a genuine issue

of fact as to whether Sai was forced to retire because she is Hawaiian.

The court is also unconvinced that race discrimination may be inferred from Erica Myers's alleged ill-will towards Hawaiians.  Nothing in the record indicates that Myers took any part in the decision to terminate Sai.  Accordingly, there is nothing in the record indicating that any alleged bias by Myers should be imputed to the people who decided to terminate Sai or have her retire.

V.      CONCLUSION.

For the foregoing reasons, this court denies summary judgment with respect to Sai's tangible adverse employment action age discrimination claim.  In all other respects, summary judgment is granted in favor of H&R Block.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 11, 2010.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
United States District Judge

Sai v. H&R Block Enterprises, Inc., CIVIL NO. 09-00154 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT